UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**CHRISTINA C. RILEY,**                                              Chapter 7
    Debtor                                                    Case No. 09-10096-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the "Creditor's Motion for Dismissal under Rule 707(b)(1)(2)(3)" [sic] filed by Dorothy Driscoll ("Attorney Driscoll"), the former divorce attorney and a creditor of Christina C. Riley (the "Debtor"). The Debtor filed a Response to the Motion and an Objection. The Court heard the matter on June 30, 2009 and deemed it a contested matter. On July 6, 2009, the Court issued a pretrial order requiring the completion of discovery by August 24, 2009 and the filing of a Joint Pretrial Memorandum by September 24, 2009. At the parties' request, the Court extended the time for filing the Joint Pretrial Memorandum.

On May 18, 2010, the Court conducted an evidentiary hearing at which the Debtor testified and twelve exhibits were admitted into evidence. The Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

### II. FACTS

The Debtor is a divorced, high school art teacher with two children, ages one and

1

four. She and her children reside with her parents at 56 Traincroft [sic], Medford, Massachusetts. The Debtor was and is engaged in a protracted divorce proceeding in which she was represented by Attorney Driscoll for an undisclosed period of time. The Debtor and her former spouse owned a residence at 11 Boarder Street, Woburn, Massachusetts. The Debtor and her children moved into her parents' home at some point either before or during the divorce proceeding and the Woburn property was sold for a price less than the outstanding liens.

The Debtor filed a voluntary Chapter 7 petition on January 7, 2009. She filed her Schedules, Statement of Financial Affairs, Official Form 22A - - the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation, and Certificate of Counseling, dated September 30, 2008, with her petition. On Official Form 22A, the Debtor reported her annualized current monthly income in the sum of $58,018.68 and set forth the applicable median family income for Massachusetts in the sum of $77,960. Accordingly, she indicated on Official Form 22A that the presumption of abuse under 11 U.S.C. § 707(b)(2) did not arise.

On Schedule A - Real Property, the Debtor disclosed that she owned no real property. On Schedule B - Personal Property, the Debtor disclosed assets worth approximately $67,000, including retirement plans and a 2001 Toyota RAV 4, all of which she claimed as exempt on Schedule C-Property Claimed as Exempt. The Debtor reported that she had no secured or unsecured priority creditors on Schedule D-Secured Creditors and Schedule E - Creditors Holding Unsecured Nonpriority Claims, respectively. On

Schedule F - Creditors Holding Unsecured Nonpriority Claims, the Debtor disclosed substantial unsecured debt, including a claim held by Attorney Driscoll in the sum of $35,000. Excluding Attorney Driscoll's claim, the Debtor set forth unsecured, nonpriority claims totaling $77,157.71. The Debtor did not disclose the existence of any executory contracts on Schedule G-Executory Contracts, although on Schedule H-Co-Debtors she listed Robert Emmet Riley as a co-debtor with respect to an unsecured debt owed to Sovereign Bank.

The Debtor also filed Schedules I and J - Current Income and Expenditures of Individual Debtor(s) with her petition. On her original Schedule I, she disclosed monthly gross wages of $4,834.89 and average monthly income of $3,309.56. She failed to list child support on Schedule I and, in response to Question 17 on Schedule I concerning any potential "increase or decrease in income reasonably anticipated to occur within the year following the filing of this document," she answered: "NONE."

On Schedule J, the Debtor represented that her monthly rent was $1,200 and that she incurred monthly child care expenses of $1,700, plus the additional sum of $203 for "Babysitting" and "Pre-School." She reported that her monthly net income was negative in the amount of $1,423.44.

On her Statement of Financial Affairs, the Debtor reported 2006 earnings in the sum of $62,415 and 2007 earnings in the sum of $59,632. She did not report any income from child support payments. In response to Question 3 on the Statement of Financial Affairs, the Debtor checked "None" with respect to "payments on loans, installment purchases of

goods or services and other debts . . . within 90 days," as well as with respect to "payments made to within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders." Similarly, the Debtor checked "None" in response to Question 4 concerning "suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of the bankruptcy case." She also checked "None" in response to Question 10 concerning transfers of property either absolute or as security within two years immediately preceding the commencement of the case, except for transfers in the ordinary course of business or financial affairs of the debtor.

On February 3, 2009, the Chapter 7 Trustee conducted the meeting of creditors pursuant to 11 U.S.C.§ 341. He promptly filed a Report of No Distribution on the same day.

Prior to the expiration of the deadline for filing complaints under 11 U.S.C. §§ 523 and 727, Attorney Driscoll filed numerous motions to extend the time within which to file a complaint objecting to the Debtor's discharge. Additionally, she sought leave to conduct an examination of the Debtor under Fed. R. Bankr. P. 2004.[1] The Court granted Attorney Driscoll's motions, and Attorney Driscoll had until January 11, 2010 to file a complaint under 11 U.S.C. § 727(a). Although Attorney Driscoll conducted a Rule 2004 examination of the Debtor and had over eight months from the original deadline for filing complaints

---

[1] Attorney Driscoll also filed a Motion for Authority to Take Examination of Deborah Chang, the Debtor's mother, under Rule 2004 on July 16, 2009, which the Court granted.

4

under 11 U.S.C. § 727, she never commenced an adversary proceeding seeking denial of the Debtor's discharge, although, on May 22, 2009, she filed the Motion that is now before the Court.

Following the filing of Attorney Driscoll's Motion for Dismissal, the Debtor, on May 29, 2009, filed a Motion to Amend, together with amended Schedules I and J, an amended Statement of Financial Affairs and an amended Official Form 22A, for the purpose of correcting "[v]arious discrepancies" that were "pointed out" during her Rule 2004 examination by Attorney Driscoll. On her amended Schedule I, the Debtor disclosed monthly gross wages of $5,825.27 and average monthly income of $4,525.98, an increase of $1,216.42 from the average monthly income she reported on her original Schedule I. The increase was attributable, in part, to the inclusion of monthly child support payments in the sum of $650. The Debtor did not change her answer to Question 17 on Schedule I. Although the Debtor amended Schedule J, the only change she made to that schedule was the amount of her monthly net income, which remained negative in the amount of $207. Additionally, the Debtor amended Official Form 22C to restate her monthly income and included monthly child support payments. Despite the changes, the presumption of abuse under 11 U.S.C. § 707(b) did not arise.

On her amended Statement of Financial Affairs, the Debtor, in response to Question 2 about income other than from employment, disclosed receipt of child support in the total amount of $7,800 in 2008. Additionally, in response to Question 3, she indicated that she paid her mother, $300 in 2008 and still owed her parents $50,000. In response to Question

4, she disclosed her pending divorce proceeding. Finally, in response to Question 10, she reported the sale of property located at 11 Border Street, Woburn to Christa Fey and Kristin Sandler on April 1, 2008.

Although the Debtor disclosed her obligation to her parents on her amended Statement of Financial Affairs, she did not amend Schedule F in May of 2009. Three months later, however, on September 30, 2009, the Debtor moved to amend Schedule F and filed an amended Schedule F to include the debt to her parents, Jansen and Deborah Chang, in the sum of $53,179.

At the trial, the Debtor acknowledged receipt of a stipend in the sum of $2,004.68 for her services as an advisor to the Asian Students Association, which she did not disclose in any of her Schedules or Statement of Financial Affairs. She testified that the stipend was not automatic and she only received it once in July of 2008, and thus it is unclear whether she would have had to include the income on Official Form 22A.

The Debtor testified that she omitted child support payments from her original Schedule I through inadvertence. She testified that the omission was the result of a communication problem with her bankruptcy attorney. She indicated that he misinterpreted her statement that she was seeking contempt in the divorce proceeding as being attributable to a nonpayment of child support when in fact it related to other non-monetary matters. Additionally, the Debtor testified that she did not report potential salary increases she was to receive for the 2009-2010 school year on Schedule I, Question 17 "because I hadn't even made what the contract was for the years past." Despite the

6

reported increase in monthly income, the Debtor's monthly expenditures of $4,733, which she did not adjust on amended Schedule J, exceeded her income, and both Schedule J and amended Schedule J revealed that the Debtor has no monthly net income.

Attorney Driscoll submitted evidence as to the salary that the Debtor earned as an art teacher at Burlington High School. Assuming the Debtor worked full time, for the 2008-2009 school year, she was entitled to an annual salary of $74,133 ($6,177.75 gross per month); for the 2009-2010 school year, she was entitled to an annual salary of $76,357 ($6,363.08 gross per month); and for the 2010-211 school year she is entitled to an annual salary of $78,266 ($6,522.17 gross per month). The 2010-2011 salary represents an annual salary increase of $4,133 from 2008-2009. The Debtor testified, however, that her salary was inconsistent as it was reduced if she missed work to attend court hearings in conjunction with her divorce or bankruptcy cases or if she missed work because of the illnesses of her children. Indeed, she testified that one of her children was ill with the H1N1 flu, and that, as a result, she was unable to teach in order to take care of him.

Attorney Driscoll also submitted Financial Statements which the Debtor provided to the Middlesex Probate and Family Court, Department of the Trial Court. The Financial Statement executed by the Debtor on November 18, 2008 reflected base weekly pay of $1,211 or $4,844 per month and net weekly income of $963.74 or $3,852 per month. The Financial Statement also reflected that the Debtor incurred child care expenses of $463 per week or $1,852 per month. Additionally, the Financial Statement reflected that the Debtor's parents had made personal loans to her totaling $50,000. The November 18, 2009 statement

7

was signed by Attorney Chin. An earlier Financial Statement, dated March 5, 2008, was signed by Attorney Driscoll. It reflected weekly child care expenses of $466 or $1,864 per month.

In addition to challenging the legitimacy of the Debtor's reported income, Attorney Driscoll questioned the Debtor about her monthly expenses, submitting canceled checks to support her contention that the Debtor's actual child care and rent expenses were less that those set forth on Schedule J. The Debtor pays monthly rent to her parents in the sum of $1,200. She formerly had paid them approximately $300 per month.

Attorney Driscoll, through her examination of the Debtor at trial, intimated that the rental payments and child care payments made by the Debtor to her parents were disguised loan repayments. The Debtor testified, however, that she utilizes a significant portion of her parents' home and that the amount she pays for rent was negotiated once she determined to permanently reside in their home. She also indicated that the rent was fair under the circumstances given the expenses of the household. She stated that she reached an agreement with her parents to pay them $1,200 in monthly rent after it became clear to her that she and her small children would be residing with her parents for the foreseeable future. She testified:

> I discussed it [the amount of rent] with my parents, looked at what the expenses were, the home, electricity, water, gas - - the space, the amount of space that we were using in the home, and decided, you know, that it was going to be a permanent residence for me and the two children. . . . We have two bedrooms. The kids have a playroom downstairs. There's a family room. Kitchen, bath - - we have our own bath just for myself and the kids.

8

Nevertheless, canceled checks and check stubs submitted by Attorney Driscoll establish that the Debtor began attempting to make $1,200 per month rental payments to her parents in September when she first consulted with her bankruptcy attorney and obtained a credit counseling briefing. She failed to make full rent payments to her parents in February and March of 2009, but that she made full rental payments to them in May, June and July, 2009. The Debtor did not produce a written lease agreement with her parents, and she pays them bi-monthly in varying amounts.

With respect to her child care expenses, Attorney Driscoll produced evidence that the Debtor paid various child care providers, including her mother, the total sum of $16,176 in 2008 or $1,348 per month, rather than the $1,700 reported by the Debtor on Schedule J. Additionally, for the first four months of 2009, the Debtor paid a total of $6,055 for child care, or an average of $1,513.75 per month.

On her Statement of Financial Affairs, the Debtor failed to disclose a transfer of $7,500 to Attorney Merril Chin ("Attorney Chin"), her current divorce lawyer. The Debtor retained Attorney Chin in September of 2008. The Debtor testified that her parents advanced her the sum of $7,500 to pay Attorney Chin's retainer and that she repaid them within a few days from a loan from her teacher's pension. She stated that she did not consider it a loan and that it was not documented as a loan.

**IV. DISCUSSION**

    A. Applicable Law

    Section 707(b)(1) of the Bankruptcy Code provides that, after notice and a hearing,

the court, on its own motion or on motion by the U.S. Trustee, the Chapter 7 trustee (or the bankruptcy administrator, if any), or any party in interest, may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts (or, with the debtor's consent, convert such a case to one under Chapter 11 or 13) if the court finds that granting relief would be an "abuse." 11 U.S.C. § 707(b)(1).[2] Under § 707(b)(2), a bankruptcy court must "presume abuse" if a debtor fails the means test. As Judge Rosenthal observed in In re Boule, 415 B.R. 1 (Bankr. D. Mass. 2009), "Form B22A is sometimes referred to as the 'means test.' The means test for a Chapter 7 debtor is actually the calculations set forth in Parts IV-VII, which are based upon § 707(b)(2), a section which has been called the heart of the means test.'" Id. at 4 (citing In re Singletary, 354 B.R. 455, 460 (Bankr. S.D. Tex. 2006)). Only debtors whose monthly income exceeds the state median for their family size are subject to the means test. *See* Morse v. Rudler (In re Rudler), 576 F.3d 37, 40 (1st Cir. 2009). The purpose of the means test "is to distinguish between debtors who can repay a portion of their debts and debtors who cannot." *See* Ross-Tousey v. Neary (In re Ross-Tousey), 549 F.3d 1148, 1151 (7th Cir. 2008). According to the First Circuit in Rudler, BAPCPA "was designed to lessen the resort to Chapter 7 filings by, among other measures, amending section 707(b) of the Bankruptcy Code to relax the standard for dismissing a Chapter 7 case.

---

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") made four major changes to section 707(b). The four major changes are that "substantial abuse" was changed to "abuse;" creditors, the case trustee, and other parties in interest now have standing to make such a motion; the court may dismiss or, with the debtor's consent, convert the case to a Chapter 11 or Chapter 13; and, finally, there is no presumption in favor of granting Chapter 7 relief. *See generally* Nancy C. Dreher and Joan N. Feeney, Bankruptcy Law Manual, § 10:18 (June 2010).

10

. . ." 576 F.3d at 40.

Under § 707(b)(3), even if a debtor passes the means test, as the Debtor has in the instant case, or rebuts the presumption of abuse under section 707(b)(2), a bankruptcy court must dismiss the debtor's case if the debtor filed the petition in bad faith or if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A), (B). The party asserting the existence of abuse has the burden of proof on the issue, and because the elements of bad faith and totality of the circumstances are disjunctive, a party can sustain its burden by proving either element by a preponderance of the evidence. *See, e.g.,* In re Perelman, 419 B.R. 168, 177-78 (Bankr. E.D.N.Y. 2009); In re Baker, 400 B.R. 594, 597 (Bankr. N.D. Ohio 2009); In re Perrotta, 378 B.R. 434, 437 (Bankr. D. N.H. 2007); In re Oot, 368 B.R. 662 (Bankr. N.D. Ohio 2007).

Courts considering dismissal under the "totality of the circumstances" generally consider both pre and postpetition acts and circumstances. *See* In re Goble, 401 B.R. 261, 276 (Bankr. S.D. Ohio 2009). Moreover, courts generally refer to pre-BAPCPA cases and the factors identified in them to determine whether a case warrants dismissal under the totality of the circumstances. For example, in In re Boule, the court stated:

> In determining whether to apply § 707(b) to an individual debtor, . . . a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. Substantial abuse can be predicated upon either lack of honesty or want of need.

***

> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustments of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

In re Boule, 415 B.R. at 5-6 (quoting In re Krohn, 886 F.2d 123, 126-27 (6th Cir. 1989) (citations omitted)).

In First USA v. Lamanna (In re Lamanna), 153 F.3d 1 (1st Cir. 1998), the First Circuit adopted "the 'totality of the circumstances' test largely as it is described in Krohn." Id. at 4.  It added:

> In so doing, we reject any per se rules mandating dismissal for "substantial abuse" whenever the debtor is able to repay his debt out of future disposable income, or forbidding dismissal on that basis alone. Such strict interpretations cannot be squared with the open-textured nature of § 707(b) and are inconsistent with § 707(b)'s purpose of guiding, not constraining, bankruptcy courts in the exercise of their equitable discretion. We hold that a bankruptcy court may, but is not required to, find "substantial abuse" if the debtor has an ability to repay, in light of all of the circumstances.

Id. at 4-5.[3]

---

[3] In In re Lorenca, 422 B.R. 665 (Bankr. N.D. Ill. 2010), the court observed that pre-BAPCPA six courts of appeal had interpreted "totality of circumstances" using open-ended, multi-factor tests. See In re Stewart, 175 F.3d 796 (10th Cir.1999); In re Lamanna, 153 F.3d 1 (1st Cir.1998); In re Green, 934 F.2d 568, 570 (4th Cir.1991); In re Krohn, 886 F.2d 123, 125-26 (6th Cir.1989); In re Walton, 866 F.2d 981, 983 (8th Cir.1989); In re Kelly,

B. Analysis

Although the Court must look to the totality of the circumstances, it is not appropriate to conflate the standards for evaluating a motion to dismiss for abuse under section 707(b)(3) with the grounds for denial of a discharge under 11 U.S.C. § 727(a)(4) due to the Debtor's errors and omissions on her original Schedules and Statement of Financial Affairs. Based upon the evidence presented, the Court finds that Attorney Driscoll failed to establish that the Debtor's past and future financial circumstances warrant dismissal for abuse. The Debtor credibly testified that her income was inconsistent and was never the same as the Burlington Public School's Salary Schedule due to her absences from work. At the Debtor's current salary, she has negative monthly disposable income. Her potential salary for the 2010-2011 school year is $4,133 more than the salary to which she was entitled at the time she filed her petition. Even if she were to earn a higher salary, it is unclear how much she would net after the payment of taxes and other deductions coupled with overall increases in the cost of living. Thus, although her income is stable and she is eligible to be

---

841 F.2d 908, 914 (9th Cir.1988).  It stated:

> Except for the Fourth Circuit in In re Green, 934 F.2d 568 (4th Cir.1991), these courts agreed that the primary factor in determining what the pre-BAPCPA version of the statute called "substantial abuse" (rather than merely "abuse") was the debtor's ability to repay his debts. See Costello, 2002 WL 1821663, at *4. These courts of appeals also concluded that an ability to repay debts standing alone could be sufficient to warrant dismissal, although other factors might be relevant. Id.

Lorenca, 422 B.R. at 671-72.

a debtor in a Chapter 13 case, this Court cannot find that she has the ability to repay creditors out of future earnings, unless her expenses on Schedule J either are overstated or are likely to be reduced, particularly due to the pre-school ages of her children.

The Debtor's testimony as to the amount of rent she pays her parents was credible, particularly in view of the amount of space and number of rooms available to her and her children and the inclusion of heat and other utilities in the amount of the rent. Were the Debtor to move to an apartment or consider buying a home with a comparable amount of space with utilities included, it is highly unlikely that she would be able to reduce her monthly expenditures for housing and utilities. The Court takes judicial notice that in Middlesex County the Local Housing and Utilities Standards for use on Official Form 22A for non-mortgage and mortgage/rent expense after March 15, 2010 for a family of three are $658 and $1,638, respectively.[4]

The Debtor's child care expenses are the most open to question as the $1,700 figure which the Debtor utilized on Schedule J and amended Schedule J are not supported by canceled checks. The Debtor testified that she spends approximately that sum of money on child care each month. At present, the Debtor pays individual providers, including her mother, to watch her children. Although the Debtor's checks and the amount set forth on Schedule J were not reconciled, Attorney Driscoll did not submit evidence that the Debtor

---

[4] Housing and Utilities standards include mortgage or rent, property taxes, interest, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, telephone and cell phone.

14

could reduce her child care expenses significantly. Moreover, in the Middlesex Probate and Family Court, both Attorney Driscoll and the Debtor signed Financial Statements showing child care expenses of $466 per week or $1,864 per month. Based upon the equivocal evidence, the Court is unable to conclude that the Debtor's child care expenses could be significantly reduced.

Based upon the totality of the circumstances, the Court finds that the Debtor's need for Chapter 7 relief far outweighs the evidence that she might be able to provide a dividend to her unsecured creditors through a Chapter 13 plan based upon a hypothetical salary increase of approximately $4,000. Although the Debtor's Schedules and Statement of Financial Affairs were prepared without the requisite care, the Court accepts the Debtor's explanations for the errors and her subsequent amendments. She credibly testified as to her income and expenses, and the totality of her circumstances justifies Chapter 7 relief.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the Creditor's Motion for Dismissal.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: September 14, 2010
cc: Debbie S. Bolan, Esq., Michael A. Dixon, Esq.